**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward C. Horner, ) | No. CV 05-3800-PHX-NVW |
| Plaintiff, ) | **ORDER** |
| vs. ) | [Not for Publication] |
| Youghiogheny Communications, L.L.C.; ) Youghiogheny Communications-Texas, ) L.L.C.; Paul Posner, ) | |
| Defendants. ) | |

The court has considered Defendants' Motion to Dismiss Complaint and/or Stay or Transfer Action (doc. # 10), Plaintiff's Response (doc. # 18), and Defendants' Reply (doc. # 21).

Plaintiff Edward Horner brought this action against Defendants Youghiogheny Communications, L.L.C. ("Youghiogheny"), Youghiogheny Communications-Texas, L.L.C. ("Youghiogheny-Texas"), and the C.E.O. of Youghiogheny, Paul Posner (collectively "Defendants"), alleging breach of employment contract, unjust enrichment arising therefrom, and failure to pay wages under Arizona Revised Statutes § 23-353. (doc. # 1 Ex. 1.) Defendants now move for dismissal based on lack of personal jurisdiction and improper venue. In light of Youghiogheny's prior-filed action in Texas regarding the same dispute, Defendants alternatively move for a stay or transfer of this action to Texas.

**I.      Background**

Youghiogheny is a Delaware limited liability company with its principal place of business in Texas. (doc. # 10 Ex. 1 at ¶¶ 5, 7.) Defendant Paul Posner is the sole member of Youghiogheny. (doc. # 13 at ¶ 4.) Youghiogheny has no office, employees or assets in Arizona and is not authorized to do business in the state. (*Id.* at Ex. 1 at ¶¶ 6-7.) Youghiogheny is the sole owner of Youghiogheny-Texas, a Delaware limited liability company with its principal place of business in Texas. (*Id.* at Ex. 1 at ¶ 8.) Youghiogheny-Texas also has no office, employees or assets in Arizona and is not authorized to do business in the state. (*Id.* at Ex. 1 at ¶¶ 8-12.) Jurisdiction is under 28 U.S.C. § 1332, as Plaintiff is a citizen of Arizona and Defendants are citizens of Texas.

This action arises out of an employment contract signed by Horner and Posner, acting on behalf of Youghiogheny, in June of 2005. (doc. # 10 Ex. A.) Pursuant to the contract, Horner was to oversee the construction of Youghiogheny's South Texas wireless data communications network. (*Id.* at ¶ 3.) The parties negotiated the contract over telephone and email and in meetings held in Texas. (doc. # 10 Ex. 1 at ¶ 16.) Horner travelled to Texas for in-person negotiations, none of which occurred in Arizona. (*Id.*) At the insistence of Horner, the contract nonetheless allowed Horner to remain in Arizona to perform some of the work on the contract. (*Id.* at Ex. 1 at ¶ 21.) The contract stated:

> Your work efforts while employed by the Company will be on a full-time basis and will require you to spend a minimum of two weeks per month in San Antonio or any other location necessary for performance of your duties for the Company. The balance of your full-time work hours would be undertaken, at your option, in Arizona. You agree to arrange for part-time living arrangements in San Antonio. All travel to and from your home in Arizona, any office expenses in Arizona, and your part-time living accommodations in San Antonio shall be at your sole cost and expense.

(*Id.* at Ex. A at ¶ 3.) The contract was executed by letter agreement, mailed from Posner to Horner at Horner's Arizona residence. (*Id.* at Ex A.)

Prior to the contract Horner had performed other services for Posner. (doc. # 18 Ex. 3 at ¶ 9.) The two originally met in Texas four years previously, in 2001, while Horner was

- 2 -

1 still a citizen of Texas. (*Id.* at Ex. 3 at ¶ 4.) Horner moved to and became a citizen of
2 Arizona in 2003. (*Id.* at Ex. 3 at ¶ 10.) In the context of this "prior professional
3 relationship," Posner met with Horner over breakfast in Arizona on one occassion. (*Id.* at
4 Ex. 3 at ¶ 9; doc. # 10 Ex. 1 at ¶ 15.)

5 Horner alleges that on August 10, 2005, Posner terminated his employment during a
6 meeting in Youghiogheny's office. (doc. # 1 Ex. 1 at ¶ 17; doc. # 10 Ex. 1 at ¶¶ 24-27.)
7 Horner then sent Youghiogheny a demand letter, after which Youghiogheny filed a
8 declaratory judgment action in the Western District of Texas (the "Texas case"). (doc. # 18
9 at 2:22-24; doc. # 10 at 3:25-28, 4:1-3.) Horner subsequently filed an action in Arizona state
10 court against Youghiogheny, Youghiogheny-Texas, and Posner, which Defendants removed
11 to this court. (doc. # 1.)

12 **II.    Personal Jurisdiction**

13 "Where, as here, there is no applicable federal statute governing personal jurisdiction,
14 the district court applies the law of the state in which the district court sits."
15 *Schwaqrzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citations
16 omitted); *accord Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). In
17 Arizona, the long-arm statute extends personal jursidiction to the permissible limits of due
18 process. *Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987).
19 "Consequently, the question is whether exercising jurisdiction over defendants would offend
20 due process." *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).

21 Where a district court decides a motion to dismiss for lack of personal jurisdiction
22 without holding an evidentiary hearing, "dismissal is appropriate only if the plaintiff has not
23 made a prima facie showing of personal jurisdiction." *Amer. Tel. & Tel. Co. v. Compagnie
24 Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted). "That is, the plaintiff
25 need only demonstrate facts that if true would support jurisdiction over the defendant."
26 *Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) (citations omitted). In determining whether
27 Horner has made a prima facie showing of personal jurisdiction, "uncontroverted allegations
28 in [Horner's] complaint must be taken as true, and conflicts between the facts contained in

1 the parties' affidavits must be resolved in [Horner's] favor." *Amer. Tel. & Tel.*, 94 F.3d at 588
2 (citations and internal quotations omitted).

3      "Personal jurisdiction may be founded on either general jurisdiction or specific
4 jurisdiction." *Panavision*, 141 F.3d at 1323; *Amer. Tel & Tel.*, 94 F.3d at 588. Here, Horner
5 does not allege that general jursidiction is operative. (doc. # 18 at 10:16-17.) The issue
6 before the court is therefore whether specific jurisdiction exists.

7      The Ninth Circuit uses a three-part test to determine whether a district court may
8 exercise specific jurisdiction:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

13 *Panavision*, 141 F.3d at 1320 (citations omitted); *accord Glencore Grain*, 284 F.3d at 1123;
14 *Ballard*, 65 F.3d at 1498.

15      Here, Horner has not presented evidence of the three requirements with regard to
16 Youghiogheny-Texas or Posner in his individual capacity, and it would appear that neither
17 of the first two requirements are met for either of these defendants. Instead, Horner suggests
18 that the court exercise alter ego jurisdiction over these two defendants, arguing that
19 Youghiogheny-Texas and Youghiogheny are the alter egos of Posner and of each other.
20 Alter ego jurisdiction would allow the court to impute Youghiogheny's contacts to
21 Youghiogheny-Texas and Posner in his individual capacity.

22      As a general matter, "[t]he existence of a relationship between a parent company and
23 its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis
24 of the subsidiaries' minimum contacts with the forum." *Doe v. Unocal Corp.*, 248 F.3d 915,
25 925 (9th Cir. 2001) (citations omitted). However, "if the parent and subsidiary are not really
26 separate entities," the plaintiff may impute the minimum contacts of the subsidiary to the
27 parent. *Id.* at 926. To defeat a motion to dismiss for lack of personal jurisdiction using this
28 argument, "the plaintiff must make out a prima facie case (1) that there is such unity of

interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate entities would result in fraud or injustice." *Id.* (citations, alterations and internal quotations omitted).

To establish a prima facie case, Horner has provided only his own affidavit testimony, which asserts conclusorily that the corporate defendants "are merely the legal instrumentalities of Posner." (doc. # 18 Ex. 3 at ¶ 7.) Horner's affidavit states:

> 7. During the approximately five years I have known Posner, I have observed his general practice of of establishing numerous separate corporate entities in order to compartmentalize his personal business activities. Posner maintains sole control of these entities, which he maintains separately in order to avoid liability, including those named as defendants in the instant action. The corporate entities are merely the legal instrumentalities of Posner.
> 8. Posner used all of these companies to aid in his compartmentalization of assets. He had the employees in Youghiogheny-Texas, the contract for services with vendors with another entity, the F.C.C. licenses were held in Punxsutawney and Youghiogheny, L.L.C.'s [sic], and other entities were used to execute contracts for equipment. My contract for employment was with Posner acting as the head of all of these companies and I performed work on behalf of all of these companies.

(*Id.* at Ex. 3 at ¶¶ 7-8.) Horner has not sought additional discovery on this issue.

Horner's affidavit does not establish a prima facie case that failure to disregard the separate entities of the corporate defendants would result in fraud or injustice. The burden of showing the existence of personal jurisdiction is on the party seeking to invoke the court's jurisdiction. *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Horner's argument therefore fails on that ground.

Morever, Horner's evidence fails to establish a prima facie case that "such a unity of interest and ownership between [Posner] and [the corporate defendants] that their separate corporate personalities no longer exist." *Doe*, 248 F.3d at 928 (citations omitted). First, Horner's own affidavit works to negate this argument, acknowledging that Posner "maintains separately" these companies. If the entities are maintained separately, that suggests to some extent that they should be viewed as individual entities. *See, e.g.*, *Chapman v. Field*, 124 Ariz. 100, 102, 602 P.2d 481, 483 (Ariz. 1979) (noting in refusing to pierce the corporate veil

that the corporation had been set up properly, that articles of incorporation had been properly filed, and that insurance and a bank account had been obtained in the corporation's name); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459 (2d Cir. 1995) (noting in rejecting alter ego argument that "[s]ignificantly, the plaintiffs have not challenged [the defendant's] assertions that [the subsidiary's] board of directors held regular meetings, that minutes from those meetings were routinely prepared and maintained in corporate minute books, that appropriate financial records and other files were maintained by [the subsidiary], that [the subsidiary] filed its own tax returns and paid its own taxes, and that [the subsidiary] had its own employees and management executives who were responsible for the corporation's day-to-day business.").

Second, Horner provides no specific factual evidence in support of his conclusory allegations regarding the alter ego status of the corporate defendants. "It is well settled that courts should disregard conclusions of law (or 'ultimate fact') found in affidavits . . . ." *F.R.C. Int'l, Inc. v. United States*, 278 F.3d 641, 643 (6th Cir. 2002); *accord Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 801 (8th Cir. 2004). While Horner's affidavit generally asserts that Horner "maintains sole control" over the corporate defendants, for example, there is nothing factually specific in Horner's affidavit upon which to rest that legal conclusion. *Compare Fletcher*, 68 F.3d at 1459 (rejecting alter ego argument despite the specific evidence that parental approval was required for leases, major capital expenditures and the sale of the subsidiary's assets); *Joiner v. Ryder Sys.*, 966 F. Supp. 1478, 1485 (C.D. Ill. 1996) (rejecting alter ego argument despite the specific evidence that parent corporation's approval was required for subsidiary acquisitions and for annual capital budget).

Third, the law will not lightly disregard the corporate status of a defendant merely because circumstances could suggest that another entity is dictating the defendant's actions. In *Amer. Tel. & Tel.*, 94 F.3d at 586, for example, the court held that the plaintiff had not established a prima facie case where evidence suggested that the parent owned 80% of the subsidiary's stock, that the subsidiary invested $1.5 million dollars at the parent corporation's request, and that the subsidiary's board voted to approve purchases suggested by parent-

1  elected directors. *Id.* at 588, 591. Despite those facts, which were accepted as true, the court
2  held that "[t]he circumstances relied upon to establish . . . 'domination' over [the subsidiary]
3  reflect no more than a normal parent-subsidiary relationship." *Id.* at 591 (citations omitted).
4  Here, although the general allegations in Horner's affidavit circumstantially could suggest
5  that Posner dictates the actions of the corporate defendants, a prima facie case of domination
6  requires a further showing.

7  Because the court rejects Horner's alter ego argument, and because Horner has
8  submitted no evidence suggesting that Youghiogheny-Texas or Posner in his personal
9  capacity are subject to personal jurisdiction, the court grants Defendants' motion to dismiss
10 with respect to those two defendants. The court need not reach the difficult issue of whether
11 personal jurisdiction exists over Youghiogheny because, as discussed below, it declines
12 jurisdiction over the case on the basis of comity. *See Pacesetter Sys., Inc. v. Medtronic, Inc.*,
13 678 F.2d 93, 96 n.2 (9th Cir. 1982) (upholding district court's decision to decline jurisdiction
14 under rule of comity without having decided personal jurisdiction issue).

15 **III.    The Rule of Comity**

16 "There is a generally recognized doctrine of federal comity which permits a district
17 court to decline jurisdiction over an action when a complaint involving the same parties and
18 issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678
19 F.2d 93, 94-95 (9th Cir. 1982) (citations omitted). "[S]ound judicial administration would
20 indicate that when two identical actions are filed in courts of concurrent jurisidiction, the
21 court which first acquired jurisdiction should try the lawsuit and no purpose would be served
22 by proceeding with a second action." *Id.* This "'first to file' rule normally serves the purpose
23 of promoting efficiency well and should not be disregarded lightly." *Church of Scientology*
24 *of Cal. v. United States Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (citations omitted).
25 In applying the doctrine of comity district courts are alotted "an ample degree of discretion."
26 *Pacesetter*, 678 F.2d at 95.

27 Here, Youghiogheny was the first to file an action regarding the parties' controversy.
28 The subject matter of the two cases, moreover, is identical, and Horner has not argued

- 7 -

1 otherwise. On the contrary, Horner has acknowledged in previous court filings that the cases
2 are "the same." (doc. # 18 Ex. 1 at 2, ¶ 3 (Horner's motion to dismiss filed in the Texas case
3 in which Horner argues that the Texas case should be dismissed "because the same case is
4 being heard" in Arizona).) Finally, the properly-invoked parties in the two actions are
5 identical. Although it is true that Horner named as defendants in this case Youghiogheny-
6 Texas and Posner in addition to Youghiogheny, the court lacks personal jurisdiction over
7 those two additional defendants.

8 The goal of judicial efficiency is served by this court's declining jurisdiction. As was
9 the case in *Pacesetter*, 678 F.2d at 96, neither action has proceeded past the the pleading
10 stage. *Id.* "However, permitting multiple litigation of these identical claims could serve no
11 purpose of judicial administration, and the risk of conflicting determinations . . . [is] clear."
12 *Id.* Moreover, "[n]o apparent bar exist[s] to a presentation of [Horner's] claims and defenses
13 before the [Texas] court." *Id.* Rather, "[t]hat forum [is] capable of efficiently resolving all
14 issues." *Id.*

15 Likewise, consideration of the practicalities of this litigation suggests that the court
16 stay its hand. "In appropriate cases it would be relevant for the court in the second-filed
17 action to give consideration to the convenience of the parties and witnesses." *Id.* Here, the
18 contract at issue was negotiated entirely in Texas, related to a project to be performed
19 entirely in Texas, and to the extent it mandated that work be performed in any particular
20 location, that work was to be done in Texas. The only witness in Arizona is Horner, who
21 under the contract was free do his work from Arizona except for of two weeks per month of
22 required work in Texas.

23 Consideration of the factors for transfer of venue under 28 U.S.C. § 1404(a) supports
24 declination of jurisdiction in this court. Such declination is the practical equivalent of
25 transfer of venue of the remaining claim against Youghiogheny to the Western District of
26 Texas. The only witness in Arizona is Plaintiff himself. The contract was made and broken,
27 if it was broken, in Texas. The work to be done pursuant to the contract was directed entirely
28 to Texas; none of it related to Arizona. Texas witnesses could not be compelled to attend

trial in Arizona. The pending Texas action involves the same claim. While Plaintiff's choice of the Arizona venue is entitled to weight, the weight of all considerations favors resolving this dispute in Texas.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Complaint and/or to Stay or Transfer Action (doc. # 10) is granted as follows:

1. This action is dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction as against Defendants Youghiogheny Communications-Texas, L.L.C., and Paul Posner.

2. This action is dismissed without prejudice as against Defendant Youghiogheny Communications, L.L.C. pursuant to comity and in favor of the prior pending action on the same claim in the Western District of Texas, No. SA-50-CA-846-RF.

3. The Clerk shall enter judgment accordingly and shall terminate this action.

DATED this 12th day of May 2006.

_____
Neil V. Wake
United States District Judge